# Thornton v. Cochran.

*Trespass for Illegal Seizure of Personal Property.*

1. *Sufficiency of complaint, in description of property and statement of time.* — A complaint in trespass, in the form prescribed in the Revised Code (p. 677), for wrongfully taking "to wit, on the —— day of February, 1871, eleven bales of lint cotton, seventeen thousand pounds of seed cotton, three hundred bushels of corn, and twenty-five bushels of wheat," is not demurrable for an insufficient description of the property, nor for indefiniteness in the statement of the time.

2. *Proof of payment of mortgage debt.* — In trespass by the mortgagor against the mortgagee of personal property, for taking possession of the property after the law day of the mortgage, — the defendant justifying under a power in the mortgage, and the plaintiff contending that the mortgage was satisfied, — the plaintiff may prove payments on the mortgage debt, made by him after the law day, but before the alleged trespass.

3. *Mortgagee's right to take possession of mortgaged property.* — A mortgagee of personal property has no right to take it out of the mortgagor's possession, by force, or threats, or against his will, although the law day has passed, and the mortgage contains an express power authorizing him to take possession on default being made in the payment of the secured debt.

4. *What constitutes trespass.* — A mortgagee of personal property, going on the premises of the mortgagor, accompanied by a deputy sheriff, whom he has indemnified to seize the property, but who has no legal process, cannot escape the consequences of his trespass in taking the property, on the ground that the mortgage was forfeited, and contained an express power authorizing him to take possession.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. W. J. HARALSON.

This action was brought by W. W. Cochran against R. S. Thornton, the complaint being in these words : " The plaintiff claims of the defendant fifteen hundred dollars, as damages, for wrongfully taking the following goods and chattels, the property of the plaintiff, to wit, on the —— day of February, 1871, eleven bales of lint cotton, seventeen thousand pounds of seed cotton, three hundred bushels of corn, and twenty-five bushels of wheat." The defendant demurred to the complaint — 1st, " because the property mentioned therein is not sufficiently described ; " and, 2d, " because it does not state the time when the alleged trespass was committed." The court overruled the demurrer, and the defendant then pleaded three special pleas, each justifying the seizure under a mortgage, or instrument in the nature of a mortgage, hereinafter set out ; and issue was joined on these pleas.

The bill of exceptions purports to set out all the evidence adduced on the trial, but it is not necessary to state it at length. It appeared that the plaintiff had rented land from the defendant for the year 1870, and was still in possession of it when the alleged trespass was committed, which was between the 16th and 19th days of February, 1871. On that day, the defendant went on the plaintiff's premises, accompanied by one L. D. Ramsey, who was a deputy sheriff of the county, and took possession of the personal property mentioned in the complaint, which was a part of the defendant's crop. Ramsey's deposition was taken by the plaintiff, but was read in evidence on the trial by the defendant. He testified, in substance, that he went on the plaintiff's premises, and made a seizure of the property, at the instance of the defendant, who had given him a bond of indemnity, and told him that he had a mortgage on the property, which he said was unsatisfied ; and that he had no attachment, nor any other legal process, but made the seizure under the defendant's mortgage. This mortgage, which was read in evidence by the defendant, was signed by the defendant, dated the 14th August, 1869, and was in the following words : " On or before the 25th day of December, 1870, I promise to pay R. S. Thornton fifteen hundred dollars, for six mules, viz., Sallie, Mollie, Roda, Puss, Martha, and Cuff ; and in order (?) said Thornton in the said sum of fifteen hundred dollars when the same becomes due, I hereby sell, mortgage, and convey to said Thornton said mules and the residue of my crop, over and above the twenty bales of cotton I have this day agreed to pay him as rent for a certain part of his land ; and in the event I fail to pay said fifteen hundred ·dollars, when the same becomes due, then, [and] in that event, said Thornton is authorized to take possession of said property,

[Thornton v. Cochran.]

and sell so much thereof as may be necessary to pay his debt as aforesaid.   In witness whereof," &c.

" The plaintiff introduced one W. B. Anderson as a witness, who testified as follows : Witness was present at the alleged trespass.   The defendant and L. D. Ramsey came to the defendant's plantation, which the plaintiff had rented and cultivated during the year 1870, and was still in the possession thereof, from the 16th to the 19th February, 1871, for the purpose of gathering the crop raised in 1870 ; and took possession of the following property, which belonged to the plaintiff, and was in his possession, to wit : three bales of cotton, ginned and packed, and lying on the bank of the river, of ordinary quality, and averaging five hundred pounds each ; also, three hundred bushels of corn, seven stacks of fodder (three hundred bundles to the stack), twenty-five bushels of wheat, eight thousand pounds of seed cotton, picked and in the gin-house, ten thousand pounds of seed cotton ungathered in the field, and eight hundred bushels of cotton seed ; which property was by them turned over to witness, who was in the defendant's employment, and was his agent.   The plaintiff asked said witness, what became of the cotton in the field ; to which he replied, that it was picked by plaintiff, put in the defendant's gin-house, ginned and packed by him as the defendant's agent, turned over by him to the defendant, and by him shipped.   To this question and answer, each, the defendant objected, and moved to exclude the same, as illegal, irrelevant, and inadmissible under the complaint ; which objections the court overruled, and admitted the evidence ; to which the defendant excepted."

The plaintiff was not present when the seizure of the property was made, but he came up a few minutes afterwards, and a conversation then ensued between him and the defendant, which was related by the witness Anderson as follows : " Plaintiff told defendant, that he did not owe him much, if anything, and that, if he would settle, he (plaintiff) would pay him, if he owed him anything, if it took the three bales of cotton on the bank of the river."   This conversation was related by the plaintiff, testifying for himself, thus : " Plaintiff told defendant that, according to his count, he owed him little, if anything ; and that if he would come to a settlement, and he owed him anything, he would pay him, if it took the three bales of cotton on the river bank."   By agreement between the plaintiff and defendant, made a few days after the seizure of the property, the plaintiff undertook to gather the cotton in the field, and deliver it to said Anderson, as the agent of the defendant, by whom it was to be ginned, and then shipped and sold by the defendant ; and this agreement seems to have been carried into effect, though there was no proof that the money arising

[Thornton v. Cochran.]

from the sale of this cotton was applied as a partial payment of the mortgage debt. "For the purpose of showing a payment of said mortgage before the alleged trespass," the plaintiff offered in evidence the original papers in an action of detinue, instituted against him by the defendant on the 17th January, 1871, to recover five of the mules named in the mortgage; which suit was dismissed by the plaintiff therein, at the same term at which the trial in this case was had; and, in connection therewith, offered to prove, by one J. M. Daniel, that said suit was compromised by the parties, — "the said Thornton agreeing to take back the said five mules, at $175 each, and allow the said Cochran a credit on the mortgage note for the amount, $875." The defendant objected to the admission of Daniel's testimony, and also to the papers in the detinue suit, "on the ground that the same was illegal and irrelevant;" and he reserved an exception to the overruling of his objections.

The defendant requested several charges to the jury, which were in writing, and of which the court refused the following: —

3. "If the jury believe, from the evidence, that Thornton held a mortgage on Cochran for $1,500, due the 25th December, 1870, and that Cochran paid him $288 on or about the 21st December, and delivered to him on the 28th December, 1870, four thousand pounds of lint cotton, to be sold, and the net proceeds to be applied as a credit on the mortgage debt; and there is no evidence that Thornton so applied it; and that Thornton received, on the 17th January, 1871, $875 in mules, which was to be credited on said mortgage, — then this was not such a payment of said mortgage as would revest the title to said cotton in said Cochran, and he cannot maintain this action.

"4. Unless it was agreed between said Cochran and Thornton that the price of the mules, to be credited on the mortgage, was to be in full payment of it, plaintiff cannot recover in this action.

"5. If the jury believe, from the evidence, that when Cochran returned the five mules to Thornton, and he agreed to credit the mortgage with $875, they were to have a settlement at some future time as to the amount due on the mortgage, the plaintiff cannot recover in this action.

"6. Unless Thornton accepted the cotton and mules and corn from Cochran as a payment in full of the mortgage debt, the plaintiff cannot recover in this action.

"7. Unless Thornton accepted the cotton and corn and mules as a payment in full of the mortgage debt, and released his title to the residue of the crops mentioned in the mortgage, then plaintiff cannot recover in this action.

"8. If the jury believe, from the evidence, that there was

[Thornton *v.* Cochran.]

any amount, however small, due on the mortgage at the time of the alleged trespass, then the plaintiff cannot recover in this action.

"10. If the mortgage was not paid at the law day, to wit, the 25th December, 1870, then the legal title to the property mentioned therein went to said Thornton, and plaintiff cannot recover in this action.

"11. Unless Thornton and Cochran had a settlement as to the amount due on the mortgage, the payment did not revest the title to the cotton in said Cochran.

"14. If Cochran agreed that the cotton, or any part thereof, might be ginned and packed by Anderson, as the agent of Thornton, and turned over to said Thornton, and by him shipped and sold, and the net proceeds applied as a payment on the mortgage debt, then the plaintiff cannot recover in this action for said cotton, or such part thereof as was so agreed to by him.

"15. If the jury believe, from the evidence, that after Thornton had taken possession of the cotton in the field, Cochran picked out the said cotton, and delivered it to Anderson, as the agent of Thornton, then the plaintiff cannot recover in this action.

"16. If the jury believe, from the evidence, that the cotton taken possession of was a part of the residue of the crop raised on Thornton's plantation, during the year 1870, after deducting the twenty bales due for rent by Cochran to Thornton, then Thornton had a right to take possession of said cotton under said mortgage."

The defendant reserved exceptions to the refusal of these several charges, and he now assigns their refusal as error, together with the overruling of his demurrer to the complaint, and the several adverse rulings of the court on questions of evidence.

JAMES AIKEN, with FOSTER & FORNEY, and THOS. H. WATTS, for appellant. — 1. The property was not described in the complaint with that degree of certainty which was necessary to identify it. 1 Chitty, 377; *Little* v. *Gibbs*, 1 South. 211. Besides, the allegation of time was left in blank, even after the amendment of the complaint. The demurrer to the complaint was, for these reasons, well taken.

2. The testimony of Anderson was irrelevant. Cotton in the field, ungathered, did not come within the description of any of the property described in the complaint. Moreover, cotton in the field, ungathered, was a part of the realty, and could not be recovered in this action. 4 Kent, 468, and notes.

3. The record of the detinue suit, and the testimony of Daniel, were intended to prove a payment of the mortgage

[Thornton v. Cochran.]

debt before the alleged trespass. But it did not prove such a payment as would revest the title to the property in the mortgagor after forfeiture, because acceptance of the payment as a satisfaction was not shown. *Harrison* v. *Hicks*, 1 Porter, 423. Moreover, these facts occurred after the law day of the mortgage, and did not divest the legal title. *Brown* v. *Lipscomb*, 9 Porter, 472; *Thompson* v. *Thornton*, 21 Ala. 808; *Morrison* v. *Judge*, 14 Ala. 182.

4. After default in the payment of the mortgage debt, if not before, the legal title passes to the mortgagee; and it cannot be divested out of him by any subsequent payment, without proof that the payment was accepted as full satisfaction; though payment, without acceptance as satisfaction, may entitle the mortgagor to go into equity. *Davis* v. *Hubbard*, 38 Ala. 185.

5. If any part of the mortgage debt was unpaid at the time the alleged trespass was committed, it being after the law day, the immediate right of possession was in the mortgagee, and he had the right to take possession, if he could do so without a breach of the peace. 2 Hilliard on Mortgages, 314, 331, 556; *Thompson* v. *Thornton*, 21 Ala. 808; *Bell* v. *Pharr*, 7 Ala. 813; *Brown* v. *Lipscomb*, 9 Porter, 472; Story on Bailments, § 287; *Flanders* v. *Barstow*, 18 Maine, 357; 2 Story's Equity, § 1031; *Pickard* v. *Lowe*, 13 Maine, 48; *Brackett* v. *Bullard*, 12 Metc. 308; 20 Vermont, 78.

6. The plaintiff's remedy, if the mortgage debt was paid, was in equity, where the disputed questions of account between him and the defendant could be adjusted.

ELLIS & CALDWELL, *contra.* — The only disputed question between the parties was, whether the mortgage debt was fully paid off before the commission of the alleged trespass. That question was fairly submitted to the jury, under the instructions of the court, and was decided by them in favor of the plaintiff; and the evidence set out in the bill of exceptions sustains their decision. *Adams* v. *McKenzie*, 18 Ala. 698; 1 Hilliard on Mortgages, 130.

B. F. SAFFOLD, J. — The complaint is not liable to demurrer, either for an insufficient description of the property, or for not stating more definitely the time when the alleged trespass was committed. 1 Chitty's Pleading, 377; R. C. p. 677.

2. The testimony of Anderson, as to what became of the ungathered cotton in the field — to wit, that it was gathered by the plaintiff, ginned and packed by the witness, and delivered to the defendant — tended to show a payment of so much on whatever debt was due from the plaintiff to the defendant under the mortgage; and was admissible. For the same rea-

[Thornton *v*. Cochran.]

son, there was no error in the admission as evidence of the record in the detinue suit between the parties. That suit was brought by the defendant in this case, to recover the mules on which he had a mortgage. It was dismissed by compromise; and the plaintiff therein received, under the compromise, a payment on the debt or demand which he held against the plaintiff in this suit.

3. There was evidence tending to show that the defendant, who was the landlord of the plaintiff, and had a mortgage on his crop, with other property, went to the plantation cultivated by the plaintiff, accompanied by the deputy sheriff, to take the crop. The plaintiff, learning what they were doing, went to them, and demanded to know what they were about. The defendant said, that they had levied on and taken possession of so much of the crop. The plaintiff protested that he did not owe anything. Nevertheless, the property was taken away. The deputy sheriff had no legal process, or other authority to make a seizure of the property. All of the charges asked by the defendant, which were refused by the court, and his objections to the testimony of the plaintiff and the witness Daniel, were based on the idea, that his mortgage gave him a right to take possession of the mortgaged property after the law day, if the plaintiff still owed him anything. Generally, a person cannot take his own by force. The law will not allow a man to commit, or to threaten, a breach of the peace, and then to justify his conduct by a trial of the right of property. Legal remedies were not intended as the secondary resort after force. 1 Chitty's Pl. 176. There was no error in admitting the testimony, nor in refusing the charges asked.

The judgment is affirmed.

NOTE BY REPORTER. — After the delivery of the foregoing opinion, the appellant's counsel filed an application for a rehearing. The points made by them, with the authorities cited, and the opinion afterwards delivered in response to their application, were as follows: —

1. The opinion of the court, affirming the judgment below, is based mainly on the assumption, that the evidence showed a forcible taking of the property by the defendant — in other words, a trespass; an assumption which, it is respectfully submitted, is entirely unsupported by the record. There was no proof of any threats, compulsion, or force of any kind; no breach of the peace was committed, or threatened. The defendant took possession of the property peaceably, in the exercise of the power conferred on him by the mortgage, and with the acquiescence of the plaintiff, or, at least, without objection from him. In taking possession, Ramsey acted only as his

[Thornton v. Cochran.]

agent, and not as deputy sheriff; and no more force or com-
pulsion was used than was reasonably necessary, or was justi-
fied by the authorities. The power to take possession, con-
ferred in express terms by the mortgage, was not revocable;
and there was no attempt to revoke it. In the following
cases, which sustain the mortgagee's right to take possession,
there was more proof of force than in the case at bar. *Nichols*
v. *Webster*, 1 Chandler, Wis. 203; *Saxton* v. *Williams*, 15
Wis. 292; *Bryant* v. *Woodruff*, 5 N. Y. Legal Observer, 139;
*Huggans* v. *Fryor*, 1 Lansing, N. Y. 276; *Coty* v. *Barnes*, 20
Vermont, 78; *McNeil* v. *Emerson*, 15 Gray, 284; *Fuller* v.
*Rounceville*, 9 Foster, N. H. 555; *S. C.* 11 Foster, 512; *Bur-
dock* v. *McVanner*, 2 Denio, 170; *Patchen* v. *Pierce*, 12 Wen-
dell, 61; *Fenwick* v. *Macy*, 1 Dana, 301; *Ferrell* v. *Lamar*, 1
Wisc. 8; *Jarvis* v. *Hamilton*, 16 Wisc. 574.

2. No question was raised by the pleadings on this point,
and this court should not decide the case on it without giving
the parties an opportunity to be heard in the court below.

3. Even if the original taking was a technical trespass, yet
the subsequent agreement between the parties, under which
the plaintiff himself gathered the cotton in the field, and after-
wards delivered it to the defendant, was valid; and no recovery
could be had, in this action, for the cotton so gathered and
delivered. This is the proposition asserted in the 15th charge
asked and refused, and its refusal was error.

SAFFOLD, J. — The appellant asks for a rehearing, on
the ground that the court assumed the taking of the property
to have been done *by force*. The witness Anderson said,
" Ramsey, who was deputy sheriff of Etowah county, and who
pretended to be acting in that capacity, turned over said prop-
erty to defendant." " In a few days afterwards, all the said
property, except the cotton, and about fifty bushels of corn
which had been destroyed, was returned to plaintiff." " De-
fendant replied " (to a proposition of plaintiff to pay, if any
balance was due), " he wanted money, and money he would
have." Ramsey said, he was deputy sheriff, but had no
process except the mortgage; he acted as Thornton's agent,
and turned the property over to him; Thornton indemnified
him, in a bond of $1,000.

When a mortgagee takes a sheriff with him, under an indem-
nifying bond of $1,000, to *levy* on the mortgaged property, and
thereby gets possession against the consent, though without the
active resistance of the mortgagor, he cannot escape from an
action of trespass, on the ground of a balance due him on the
mortgage. He and the sheriff would both be trifling with the
obedience of the citizens to the law and its officers. Admit-

[Ridgeway's Administrator *v.* Waugh.]

tance into a house, obtained under pretence of having a search-warrant, or of being authorized to make a distress, is a sufficient breaking and entering to constitute burglary. 1 Russ. on Crimes, 792.                        The rehearing is denied.